IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL BOOTH | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-429 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                **March 26, 2026**

Plaintiff Daniel Booth brings a § 1983 action against the City of Philadelphia (the "City")
and Philadelphia Police Department Lieutenant Nicholas Coco stemming from Booth's arrest on
January 29, 2023. One of Booth's claims is a *Monell* claim against the City for having a
department-wide practice of excessive force against large crowds. The City moves to dismiss
Booth's *Monell* claim for failure to state a claim under Rule 12(b)(6). Because Booth has not
sufficiently pled facts for a *Monell* claim, the Court will grant the City's motion and dismiss the
claim without prejudice.

## BACKGROUND

Booth's claim stems from an incident on the night of January 29, 2023, when he was
arrested while celebrating a Philadelphia Eagles win. *See* Pl.'s Am. Compl. ¶ 13, Dkt. No. 7. At
the time, Coco and other unnamed officers were patrolling a crowd that gathered to celebrate. *Id.*
¶ 15. While celebrating with his friends, Booth was shoved in the back by Coco. *Id.* ¶ 16. When
Booth turned around to see who pushed him, Coco struck Booth's cellphone with his baton, leading
to an apparent exchange of obscenities between the two. *Id.* ¶¶ 16-17. Coco then placed Booth
under arrest. *Id.* ¶¶ 20-23.

Booth subsequently filed a *Monell* claim against the City of Philadelphia, along with other
individual claims against Coco. *Id.* ¶¶ 5-12. Booth contends the City has a "recognized and

accepted policy [and] custom" of "excessive force, false arrests, and false imprisonments by its officers" during large gatherings within Philadelphia.  *Id.* ¶ 57.  Booth also asserts the City has failed to "train, investigate, supervise, and discipline police officers."  *Id.* ¶ 58.  Booth cites four incidents which occurred between 2007–2020 to assert the City has a systemic policy or custom of excessive force and improperly trains its officers on proper crowd control measures.  *Id.* ¶ 64.

**STANDARD**

To survive a motion to dismiss, a plaintiff must plead sufficient facts which, if true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  A claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  To make this determination, a reviewing court must (1) determine the elements required to plead each claim, (2) identify which allegations are conclusory and may not be accepted as true, and (3) assess whether the remaining, non-conclusory allegations plausibly entitle the plaintiff to relief.  *Connelly v. Lane Const.*, 809 F.3d 780, 787 (3d Cir. 2016).

In the case of alleging an informal though widely practiced custom in *Monell* claims, a plaintiff must "specify what exactly [the] custom or policy was" to satisfy the pleading standard under Rule 12(b)(6).  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).  Where a complaint in a civil rights case is subject to dismissal, courts in the Third Circuit are to grant leave to amend unless doing so would be inequitable or futile.  *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)).

**DISCUSSION**

The City asks the Court to dismiss the *Monell* claim under Rule 12(b)(6) because Booth fails to allege a pattern of excessive force during large crowd gatherings.  Def.'s Mot. Dismiss 6,

2

Dkt. No. 10. The Court finds Booth did not properly allege a pattern of excessive force because his complaint contained examples which were either flawed or not directly relevant and otherwise restated the elements of a *Monell* claim. The Court will dismiss this claim without prejudice and permit Booth to amend his complaint because additional relevant facts might allow Booth to assert a plausible *Monell* claim against the City.

Booth asserts a *Monell* claim under 42 U.S.C. § 1983 against the City, alleging a practice of "excessive force, false arrests, and false imprisonments" during "large crowd gatherings" which violate his Fourth and Fourteenth Amendment rights. Pl.'s Am. Compl. ¶ 57; *see Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 690 (1978). A city is liable under § 1983 when its "action pursuant to official municipal policy" caused a civil rights violation but is shielded from vicarious liability. *Id.* at 691. Violations may stem either from (1) official municipal policy, including informal customs which are widely recognized, or (2) from decisions made by officials when they have "final authority" to set relevant policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Whether officials have "final policymaking authority" is a question of state law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (quoting *Pembaur*, 475 U.S. at 483). "A plaintiff must also allege that the policy or custom was the proximate cause of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal citations and quotations omitted). Plaintiffs may do so by demonstrating an "affirmative link" between the policy or custom and the constitutional violation alleged. *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (internal quotation marks omitted)). "This is done for a custom if [a plaintiff] demonstrates that [the municipality] had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" *Id.* (third and fourth alternation in original) (quoting *Bielevicz*, 915 F.2d at 851).

Failure to train police officers is only a basis for *Monell* liability under the municipal custom standard "[when] the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This failure to train should be glaring enough to reflect a "deliberate or conscious choice by a municipality." *Id.* at 389. A plaintiff can plead deliberate indifference by demonstrating the "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Est. of Roman*, 914 F.3d at 798 (citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)). The allegations should focus on details of the department's training procedures rather than an individual officer's conduct, because an officer's failure to conform to proper training standards does not necessarily make the training itself flawed. *Harris*, 489 U.S. at 390-91.

Booth asserts a *Monell* claim based on (1) an alleged recognized policy of the City which allowed officers to use excessive force, false arrests, and false imprisonments of civilians at large gatherings, and (2) the City's failure to train Coco in proper crowd control measures. Pl.'s Am. Compl. ¶¶ 56-67. Booth does not allege enough facts to state either claim because he cites four flawed examples across a long period of time to prove a citywide policy or custom, and his complaint is silent about how the City trains its police officers.

The four incidents Booth cites range from 2007 to 2020:

a. Philadelphia Police Officer Richard Paul Nicoletti used excessive force by pepper-spraying a protester on June 1, 2020.
b. Philadelphia Police Officers used tear gas and rubber bullets against protesters, who organized in response to the death of George Floyd, on June 1, 2020, leading the City of Philadelphia to enter into a $9,250,000.00 class action settlement agreement with protestors harmed.
c. On August 1, 2018, Paul Minton was attending a counter protest where he was struck by Philadelphia police officers' hands and batons as they attempted to use illegal force such as assault and battery to disperse the crowd.

4

d.  In 2007, the City of Philadelphia settled a case with the ACLU on behalf of Marianne Bessey, who was arrested while holding a sign and handing out literature in Fairmount Park. The Philadelphia Police Department, as part of the settlement agreement, was to provide First Amendment and free speech training to police officers: "Civil Affairs officers will not interfere with the right of a protestor or group of protestors to stand anywhere the protester or protesters choose to stand on a public sidewalk or public right-of-way, regardless of who owns or has permission to use that right of way, so long as they do not cause damage or actual obstruction of vehicular or pedestrian travel."

*Id.* Analyzing these instances individually, the Court determines their inclusion within Booth's complaint does not properly allege a pattern of excessive force in the context of large crowds.

In Booth's first example, he points to how "Philadelphia Police Officer Richard Paul Nicoletti used excessive force by pepper-spraying a protester on June 1, 2020" but cites to *Budd v. City of Philadelphia*. Neither example assists Booth in showing a potential pattern of excessive force. In the *Nicoletti* case, the officer was charged and tried which resulted in a mistrial. *See Commonwealth v. Nicoletti*, 328 A.3d 85, 88 (Pa. Super. Ct. 2024), *appeal denied*, 345 A.3d 617 (Pa. 2025). His retrial proceedings remain pending. *Id.* at 95. In the *Budd* case, the jury found the defendant police officers did not use excessive force. *See* Civil Judgment, *Budd v. City of Phila.*, No. 13-cv-3344 (E.D. Pa. Apr. 25, 2014), Dkt. No. 40. Given how one instance was a mistrial and the other instance was a defense verdict, neither example is helpful to Booth in asserting a pattern of excessive force.

Booth's second example is a settlement agreement between a group of plaintiffs who sued the City over its actions in protests which took place between May and June of 2020. Consent Order at 1-2, *Smith v. City of Phila.*, No. 20-3431 (E.D. Pa. Mar. 20, 2023), Dkt. No. 81. This example is stronger for Booth because the amended complaint mentions a lack of proper crowd control by the City's police department several times. *See generally* Pls.' Am. Compl., *Smith v. City of Phila.*, No. 20-3431 (E.D. Pa. Sep. 16, 2020), Dkt. No. 13. However, the relevance of this case is questionable in asserting a pattern of misconduct since the litigation resulted in a settlement,

5

rather than a result which found the City liable. Consent Order at 2, *Smith v. City of Phila.*, No. 20-3431 (E.D. Pa. Mar. 20, 2023) (determining "nothing contained herein [the settlement] may be taken as or construed to be an admission or concession of any violation of law or regulation . . . or of any liability or wrongdoing" by the City). Even if the settlement could be used in assessing whether a pattern of inadequate crowd control existed, it would be only one example and thus insufficient on its own to establish Booth's allegation.

Booth's third example is also insufficient to assert a pattern of misconduct because the officers accused were found not liable of any wrongdoing. Report and Award of Arbitrators, *Minton v. Police Officers John Doe #1-10*, No. 200800082 (Pa. C.P. Mar. 31, 2023). Finally, Booth's last example is irrelevant to his allegations because the cited example is unrelated to crowd control and excessive force. *See* Pl.'s Compl. ¶¶ 7-19, *Bessey v. City of Phila.*, No. 07-1291 (E.D. Pa. Mar. 30, 2007), Dkt. No. 1. Rather, the plaintiff's complaint in this case alleged the City's police interfered with her rights to peacefully protest as a lone demonstrator, and the issue of crowd control or force is not mentioned. *Id.*

These incidents, taken together, do not properly allege a pattern of conduct suitable for a *Monell* custom claim. All incidents alleged by Booth are either not related to crowd control or resulted in verdicts for defendants, settlements, or mistrials. *See* Pl.'s Am. Compl. ¶ 64. Thus, Booth's complaint does not establish a "pattern" of excessive force.[1] *Cf. Beck v. City of Pittsburgh*, 89 F.3d 966, 973 n.7 (3d Cir. 1996) (noting that isolated events, such as one prior complaint for

---

[1]    Examples of "patterns" of unlawful conduct or systemic failure to prevent unlawful conduct include the following examples: compelling pregnant employees to take unpaid leaves of absence before medically required, *see Monell*, 436 U.S. at 660-61, failing to properly train prison officers on conflict de-escalation at a particular prison where "four to five fights" were reported every single day, and where twenty to thirty fights a day went unreported, *see Thomas v. Cumberland Cnty.*, 749 F.3d 217, 219-20 (3d Cir. 2014), and lacking training for officers within the department based on a Department of Justice report and multiple instances of plaintiff being accosted by police. *See Simpson v. Ferry*, 202 F. Supp. 3d 444, 451-52 (E.D. Pa. 2016).

excessive force against each of the officers involved, without more, do not rise to the level of a custom of abusive behavior).

The rest of Booth's complaint consists of reciting the elements of a § 1983 *Monell* claim. *See* Pl.'s Am. Compl. ¶¶ 56-67.  This portion of the *Monell* claim cannot advance past the pleading phase because the law requires a specific policy or custom, rather than broad examples of excessive force interspersed with "threadbare recitals" of the cause of action.  *See McTernan*, 564 F.3d at 658 (citation omitted).

The Court also finds Booth's failure to train allegations fail at this stage.  Booth's allegations for failure to train do not focus on the inadequacies of the training itself but instead cite examples of previous litigation which Coco was a party to.  Pl.'s Am. Compl. ¶ 65.  This focus on the actions of individual officers, rather than the training procedures, does not properly assert a *Monell* claim based on a department's failure to train.  *Harris*, 489 U.S. at 388-89.  This guideline is based on the possibility of an officer being adequately trained or going through adequate training, yet making a mistake anyhow.  *Id.* at 391.  An individual officer's mistake then, "says little about the training program or the legal basis for holding the city liable." *Id.*  In this case, Booth did not connect any wrongdoing by Coco to the City's systemic failure to train him rather than his own faults as an officer.  Further, Booth's remaining assertions consist of merely reciting the causes of action for a § 1983 case without any concrete factual allegations about their training policies.  *See* Pl.'s Am. Compl.  ¶¶ 56-67.

**CONCLUSION**

Under both the "unofficial custom" and "failure to train" bases, Booth's *Monell* claim fails the Rule 12(b)(6) pleading standard.[2]  Thus, this claim will be dismissed.  However, the Court will

---

[2]    Although it is not relevant here because Booth fails to properly plead an "unofficial custom" or a "failure to train" claim, he is not required to name a final policy maker in a case

dismiss the claim without prejudice because this matter is a civil rights case and the City did not raise any rationale as to why amendment of this claim would be "inequitable or futile." *See LabMD Inc.*, 47 F.4th at 192 (citing *Fletcher-Harlee Corp.*, 482 F.3d at 251).  An amended complaint could satisfy the standard with additional factual allegations to support a *Monell* claim. Accordingly, the City's Motion to Dismiss for Failure to State a Claim is granted, and Booth's *Monell* claim is dismissed without prejudice.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

where an informal custom is being alleged.  *See Est. of Roman*, 914 F.3d at 798 ("Despite these requirements, Roman does not need to identify a responsible decisionmaker in his pleadings.").